UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**JOSHUA LAMBO,**

    *Plaintiff,*

v.   Case No. 23-CV-1153

**NEAL ARDMAN, and**
**NIA BROADCASTING, INC.,**

    *Defendants.*

Plaintiff Joshua Lambo ("Plaintiff"), by his undersigned counsel, and for his Complaint against Defendants, states as follows:

## PARTIES

1. Plaintiff Joshua Lambo, a natural person, resides at 3215 Front Road, Jacksonville, FL 32557.

2. Defendant Neal Ardman, a natural person, resides at 235 Osprey Circle, St. Marys, GA 31558 ("Ardman").

**3.** Defendant NIA Broadcasting, Inc. is a Georgia corporation with a principal office address of 111 North Grove Boulevard, Kingsland, GA, 31548 ("NIA"). Upon information and belief, NIA owns and operates radio stations in Georgia and Florida. Ardman is an officer of NIA and holds himself out as its President.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. This court has personal jurisdiction over Defendants pursuant to FED. R. CIV. P. 4(k)(1)(a) and FLA. STAT. § 47.011, because the county in which the cause of action accrued is within the Middle District of Florida.

7. Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claim occurred in the Middle District of Florida.

## FACTS

8. In December 2020, Ardman incorporated "J4L Leasing Corp.," a Georgia corporation with the same principal office address as NIA, 111 North Grove Boulevard, Kingsland, GA, 31548. Initially, Ardman was J4L Leasing Corp.'s registered agent.

9. In September 2021, Ardman approached Plaintiff with a business proposal. Ardman proposed that Plaintiff provide J4L Leasing Corp., with substantial capital investments in cash, in exchange for an equity stake in the company and/or its holdings, and thus, a share in its profits.

10. Ardman represented to Plaintiff that J4L Leasing Corp. was primarily in the business of purchasing, leasing, and selling cell phone towers and related equipment.

11. Between September 2021 and April 2022, Ardman and NIA solicited and received eight (8) investments from Plaintiff, totaling $2,715,000.

12. On September 7, 2021, Plaintiff paid NIA $760,000, with which Defendants, upon information and belief, purchased a jet.

13. On November 1, 2021, Plaintiff paid NIA $350,000.

14. On November 30, 2021, Plaintiff paid NIA $315,000.

15. On January 31, 2022, Plaintiff paid NIA $315,000.

16. On February 4, 2022, Plaintiff paid Ardman $400,000.

17. On February 23, 2022, Plaintiff paid Ardman $400,000. Ardman stated to Plaintiff that Defendants would use this money to purchase a tower and that Plaintiff would obtain a leasehold.

18. On April 8, 2022, Plaintiff paid Ardman $175,000.

19. On August 9, 2022, Ardman emailed Plaintiff in anticipation of what he referred to as the "Sligh Ave Towers" transaction's closing, wherein he represented that (a) Plaintiff would receive $736,250.00, and (b) Ardman would not be "taking a single cent from this deal."

20. Thereafter, Ardman remitted only $631,142.57 to Plaintiff.

21. At the same time, Ardman provided Plaintiff with an undated, unsigned document purporting to be a Settlement Statement for the "Sligh Ave Towers" transaction. The document does not identify the parties to the transaction or bear signatures; moreover, the amount remitted to Plaintiff based on the Settlement Statement is substantially less than the amount Ardman promised Plaintiff ($736,250.00) in his August 9, 2022 email.

22. While Ardman's August 9, 2022 email indicated that he would not be "taking a single cent from this deal," the Settlement Statement plainly indicates that NIA received no less than $33,302.77 from the transaction's closing.

23. In a September 2, 2022 letter to Ardman, Plaintiff, through counsel,

demanded that Ardman provide the following information regarding the Sligh Towers transaction:

    i. Identify the parties to the transaction and their respective principal(s);

    ii. Specify and document Mr. Lambo's interest in the asset sold (or the selling party);

    iii. Specify Mr. Lambo's total investment in the asset sold or in the selling party, and provide proof of the exchange of consideration and/or ownership and transfer instruments evidencing same;

    iv. Provide documentation concerning all amounts deducted from the Settlement Statement, including proof sufficient to establish that all deductions relate to *bona fide* business expenses or credits related to the transaction, and to identify the recipient(s)/beneficiary(ies) of the subject deductions;

    v. Identify any entity/party that received an expense or credit on the Settlement Statement in which you have a direct or indirect ownership interest, and describe the nature and extent of any such interests.

24. Plaintiff further stated:

As for the remainder of Mr. Lambo's investments with you, we will require considerable, additional information concerning the nature of his interest in the subject asset(s) or their ownership entity(ies), their location, and your thoughts on how best to liquidate Mr. Lambo's interest(s) therein in an orderly fashion.

25. On Tuesday, March 20, 2023, Ardman sent a text message to Mr. Lambo, which read: "I should have some very large checks starting to come your way. Would you prefer checks or same day direct deposit? Sorry for the text but email server being scrubbed today."

26. In response, Plaintiff sent Defendants a litigation hold letter.

27. On about April 10, 2023, Ardman provided Plaintiff's counsel with a document, titled, "N880GP Maintenance containing invoices from vendors," which compiled invoices from 23 different vendors (hereafter, "Invoice Document.") In total, the amounts show charges of $242,437.71. The Invoice Document is not self-explanatory and does not contain the information that Plaintiff requested through counsel, or to which assets or entities the listed charges corresponded.

28. Defendants made a number direct deposits into Plaintiff's bank account, and to date, have remitted payments to Plaintiff totaling $1,007,167.24.

29. By May of 2023, Ardman had retained counsel to assist in responding to Plaintiff's requests for information about this investments with Defendants.

30. On June 13, 2023, Ardman's counsel forwarded to Plaintiff's counsel, *via* e-mail, copies of what purport to be two "Negotiable Promissory Notes."

31. The first Negotiable Promissory Note was dated November, 2021, long before Plaintiff had tendered any money to Ardman, and purports to be a promise by DRC Broadcasting, Inc., to pay NOA Broadcasting, Inc., a total of $350,000.00 over the course of five years, without interest, pursuant "to the terms of an Asset Purchase Agreement dated August 31, 2021."

32. The e-mail attaching the first Negotiable Promissory Note read, in its entirety, "Here is one of the notes that [Plaintiff] purchased. I will send you additional documents."

33. The second Negotiable Promissory Note was dated July 26, 2021, before Plaintiff had tendered any money to Ardman, and purports to be a promise by Norsan

Media LLC, to pay NOA Broadcasting, Inc., a total of 400,000.00 over the course of ten years, with 4.5% interest, pursuant "to the terms of an Asset Purchase Agreement dated April 19, 2021."

34. The e-mail that attached the second promissory note read, in its entirety, "Here is an additional note purchased by [Plaintiff]."

35. Despite repeated requests for additional information, neither Ardman nor his counsel has produced any of the following:

   i. The terms by which Plaintiff is alleged to have purchased these notes;

   ii. Any document reflecting Plaintiff's purchase of the notes;

   iii. Any documentation of Plaintiff's acceptance or acknowledgement of the assignment of the notes; or

   iv. Any additional evidence that Plaintiff owns any investments tied to Defendants whatsoever.

### FIRST CAUSE OF ACTION
**(Securities Fraud Contrary to 15 U.S.C. § 77l)**

36. Plaintiff restates and incorporates the allegations in Paragraphs 1 through 35 as if fully set forth.

37. Ardman's proposals to Plaintiff called for Plaintiff to invest his money in a common enterprise with Ardman and to expect profits solely from the efforts of others.

38. As a result, Ardman's proposals were proposals to sell Plaintiff securities, which proposals Plaintiff accepted and as to which he furnished one or more Defendants valuable consideration.

39. The "negotiable promissory notes" described above are also securities

within the meaning of 15 U.S.C. § 77b(a)(1).

40. Defendants used instrumentalities of interstate communication, including e-mail, telephone, and text messages, in obtaining money from Plaintiff, purportedly in exchange for ownership of a worthwhile investment.

41. Defendants' proposals to Plaintiff were false or misleading, insofar as they did not disclose the true nature of the security that Plaintiff was to receive in exchange for his investment.

42. Plaintiff has not profited from his investment, and Ardman has failed and refused to reveal details of how Plaintiff's money has been used.

43. Pursuant to 15 U.S.C. § 77l, Plaintiff is entitled to recover the money he paid for the securities, with interest, less the amount of the income he has received.

## SECOND CAUSE OF ACTION
**(Common Law Fraud)**

44. Plaintiff restates and incorporates the allegations in Paragraphs 1 through 43 as if fully set forth.

45. Ardman's representations in September of 2021 that Plaintiff would receive an ownership interest in J4L Leasing Corp. and a share of its profits were false.

46. Ardman's representations during 2021 that he would invest the money he solicited from Plaintiff to purchase cellular tower assets on Plaintiff's behalf or to acquire equity stakes for Plaintiff in entities which owned such assets were false.

47. On the basis of Ardman's representations, Plaintiff transferred money to Ardman and/or to entities under Ardman's control.

48. Ardman knew that that these representations to Plaintiff were false.

49. Ardman made the subject representations with the intent to induce Plaintiff to give money to Defendants, and Plaintiff did indeed provide money to Defendants in reliance on Defendants' representations.

50. Defendants' June 2023 representations that Plaintiff "purchased" the negotiable promissory notes described in paragraphs 31 and 33, above, were false.

51. Defendants know these representations to be false.

52. Defendants made these representations with the intention to induce Plaintiff's forbearance.

53. Plaintiff relied upon all of Defendants' false statements to his detriment, as he provided Ardman with $2,715,000, which was never placed in any *bona fide* investment on Plaintiff's behalf, and which has not been returned despite numerous demands.

54. As the direct and proximate result of Defendants' fraud, Plaintiff has sustained monetary damages in an amount to be determined.

55. Because Defendants acted intentionally and willfully in defrauding Plaintiff, Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

56. Plaintiff restates and incorporates the allegations in Paragraphs 1 through 55 as if fully set forth.

57. Plaintiff transferred $2,715,000.00 to Defendants.

58. By doing so, Plaintiff conferred a benefit on Defendants.

59. Defendants are aware of, and appreciate, the benefit that Plaintiff has conferred, and retain the benefit of the funds as the result of their wrongful conduct and/or failure to use the funds as promised to Plaintiff.

60. It would be inequitable, under the circumstances, for Defendants to retain Plaintiff's money without compensating Plaintiff for the unreturned funds.

## FOURTH CAUSE OF ACTION
**(Fraudulent Transaction Contrary to FLA. STAT. § 517.301)**

61. Plaintiff restates and incorporates the allegations in Paragraphs 1 through 60 as if fully set forth.

62. By accepting Plaintiff's money in consideration of offers to Plaintiff to invest his money in a common enterprise with Defendants which led him to expect profits solely from the efforts of others, Defendants sold securities to Plaintiff, as that term is defined in FLA. STAT. § 517.021(22.)

63. The securities Defendants sold to Plaintiff were not exempt under FLA. STAT. § 517.051, nor was the sale exempt under FLA. STAT. § 517.061.

64. Defendants never registered the securities as required pursuant to FLA. STAT. § 517.07.

65. Defendants' representations to Plaintiff about the securities were misleading, and constituted a device, scheme or artifice to defraud and/or an effort to obtain money from Plaintiff by an untrue statement of material fact or an omission of material facts necessary to make the statements not misleading, in light of the

circumstances under which they were made.

66. Defendants' sale of the securities to Plaintiff violated FLA. STAT. § 517.301.

67. Pursuant to FLA. STAT. § 517.21, Plaintiff is entitled to recover the money he paid for the security, with interest, less the amount of the income he has received.

## JURY DEMAND

Plaintiff demands a jury trial.

**WHEREFORE**, Plaintiff asks that the Court enter judgment in his favor and against Defendants, jointly and severally, awarding the following relief:

A. Money damages in an amount to be determined but exceeding $1,600,000.00;

B. Punitive damages in an amount to be determined;

C. His costs and disbursements in this action, including attorney fees as allowed by law; and

D. Such other and further relief as the Court deems appropriate.

Respectfully submitted this 29th day of September, 2023.

HURLEY BURISH, S.C.
*Attorneys for Plaintiff Joshua Lambo*

*/s/ Andrew W. Erlandson*

Andrew W. Erlandson
WI State Bar ID No. 1029815

Mailing Address:
33 East Main Street
Suite 400
Madison, WI 53703
(608) 257-0945 (telephone)
aerlandson@hurleyburish.com